**Adrian YBARRA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 04–93–00169–CR.**

Court of Appeals of Texas, San Antonio.

Sept. 30, 1994.

Rehearing Denied Nov. 2, 1994.

Discretionary Review Refused April 5, 1995.

Stephanie L. Barclay, San Antonio, for appellant.

Steven C. Hilbig, Crim. Dist. Atty., Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Before BUTTS, STONE and JOHN F. ONION, Jr.[1], JJ.

## OPINION

JOHN F. ONION, Jr., Justice (Assigned).

Appellant Adrian Young was indicted for murder. *See* TEX.PENAL CODE ANN. §§ 19.02(a)(1), 19.02(a)(2) (Vernon 1989).[2] The jury found appellant guilty of "murder as charged in the indictment." The jury assessed punishment at 40 years' imprisonment and a fine of ten thousand dollars.

Appellant advances eleven points of error. First, appellant contends that in absence of a waiver of jurisdiction by the juvenile court the district court had no jurisdiction over the cause. Second, appellant urges that the trial court erred "in instructing the jury that murder is a nature of conduct crime." The other points of error can be grouped into claims that because of erroneous evidentiary rulings extraneous offenses were improperly admitted, claims that the trial court erred in refusing to submit in its jury charge certain lesser included offenses, and claims that appellant was denied the effective assistance of counsel.

Appellant does not challenge the sufficiency of the evidence to sustain his murder conviction. A brief recitation of the facts is necessary to place the points of error in proper perspective. It is undisputed that on September 20, 1991, the sixteen year old appellant, with his own gun shot, and killed seventeen year old Tremayne Miller. It appears that they were schoolmates at the Robert E. Lee High School in San Antonio. The source of their difficulty is not clear. Appellant testified that he knew Miller about a month before the fatal shooting, but that their "trouble" before September 18, 1991, was "no biggie or anything." In the early evening of Wednesday, September 18th, Miller, Jessie Montemayor, Montemayor's girlfriend and others were in the parking lot of the La Maison Apartments, when appellant and his friend, Hector Caballero, crossed the parking lot. Miller spoke to Caballero, but not to appellant. Montemayor stated that appellant, who had been drinking, became angry and that he and Miller began to argue. There was some evidence at this point that appellant called Miller a "nigger," although appellant was to deny he ever made that statement at any time. Montemayor recalled that appellant first displayed a knife and then Miller pulled out his knife. Caballero testified that only Miller had a knife and tried to push him out of the way so Miller could get to appellant. Appellant stated that he was unarmed and tried to use Caballero as a shield as the others sought to calm Miller. Appellant related that he and Caballero were able to escape through a hole in the fence. Montemayor testified that when appellant left, appellant stated that he was going to get a gun.

Carlos Cruz and Mike Kimbrough encountered appellant near a convenience store about 10:30 p.m. the same evening. Appellant displayed a gun and bullets and stated that he was going to kill Miller. Cruz related that he and Kimbrough went to Miller's apartment to warn him. Kimbrough corroborated the encounter with appellant. According to Kimbrough, he and Cruz went with appellant, Caballero, and the two Montemayor brothers, George and Jesse, to the Miller apartment. When appellant suggested someone "go get Miller," Kimbrough went to the apartment and warned Miller, who locked the door. Kimbrough returned and told appellant that Miller's parents were at home. As they left the scene, Kimbrough recalled that appellant knocked on some apartment door and told a blond-headed lady that he was going to shoot Miller.

Appellant generally denied that all this occurred. He testified that after his encounter with Miller on that Wednesday evening, he went to the apartment he shared with his father, got his clothes and took them to Hector's apartment, and then he and Hector went to the apartment of appellant's mother. Appellant related that later, Hector's brother, Mike, came to that apartment to tell him

---

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. *See now,* TEX.PENAL CODE ANN. §§ 19.02(b)(1), 19.02(b)(2) (Vernon 1994).

that Miller had been at the Caballero apartment looking for appellant.

The next day, Thursday, appellant related that Miller and another boy came to the "in school suspension" classes he was attending and stood there looking at him until a teacher told them to leave. At his bathroom breaks, other students informed appellant that Miller was looking for him. On Friday, appellant stayed home from school.

Jesse Chipatecua and George and Jesse Montemayor were state's witnesses. They testified that they were with Miller about 4:20 p.m. on Friday, September 20, 1991, outside the Montemayor apartment at the Shallow Creek Apartments and that appellant came walking along on the other side of the ditch. While their testimony as to what occurred thereafter varied in some details, it was generally consistent. They testified that Miller stepped forward, told appellant he knew appellant was looking for him, and offered to fight. Appellant pulled the .38 caliber handgun from his waistband and pointed it at Miller, who asked to fight "clean" and referred to appellant as a "sissy" for using a gun. Appellant reportedly used a number of "F" words. The witnesses testified that they moved between Miller and appellant. George Montemayor told appellant to put his gun away and urged Miller to leave, to go home. Both individuals heeded the pleas. After Miller left the scene, the three witnesses walked along with appellant towards Magic Drive, discussing a party to be held that weekend. Appellant was described as being "cool." After they crossed Magic Drive, the witnesses heard a yell and saw Miller across the street approximately seventy-five yards away. At this point appellant turned, pointed the gun in Miller's direction and fired. Miller fell and appellant fled from the scene. The witnesses rushed to where Miller lay and found him bleeding. An ambulance was called.

David Tidwell testified that in the afternoon of September 20, 1991, he was on his way to Hector Caballero's apartment when he heard a gunshot. When he reached the Caballero apartment, he just walked in and heard appellant, talking to someone on the telephone, say "I got him." Appellant then showed Tidwell the gun which was still warm. Tidwell went to the location where appellant said he had shot Miller. After Tidwell saw the bleeding Miller, he called the police and pointed out the Caballero apartment.

Testifying in his own behalf, appellant stated that he left his apartment Friday afternoon and took his gun because of Miller's threats to get him. He encountered Miller and three others. Miller started towards appellant and asked him to go to the ditch to fight. Appellant related that as Miller kept approaching him, he pulled out his gun but did not point it. Miller told appellant to put the gun away and fight. Appellant reported that Miller succumbed to the pleas of the others and left to go home. Appellant then walked along with the others towards Magic Drive. Appellant admitted that they were discussing a weekend party when Miller reappeared. Appellant stated that he shot in the air to scare Miller and that he did not intend to hit Miller. Later, he recanted his testimony to the extent that he acknowledged that he shot in Miller's direction. "I saw he was going to run[3] and that is when I shot." Appellant admitted that he knew it was dangerous to have a gun and to shoot at someone, that he knew he was shooting in Miller's direction, and that when you point a gun at an individual and shoot you are likely to kill the individual.

After the shot was fired and appellant saw Miller fall, he left the scene and went to the Caballero apartment where he remained until arrested. The evidence shows that Miller was unarmed.

In connection with appellant's initial contention, we observe that the appellate record has been supplemented with the certification of the juvenile court for appellant to stand trial as an adult, the transfer order and other necessary juvenile court papers essential to the district court's jurisdiction. Thus, there

---

**3.** It appears that appellant had the impression that Miller was going to "run" towards appellant.

is no basis for appellant to continue to pursue his first point of error. It is overruled.

■ In his second point of error, appellant urges that the "trial court erred in instructing the jury that murder is a nature of the conduct offense." Section 19.02 (murder) of the Texas Penal Code, in effect at the time of this offense, provides in part:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual.

TEX.PENAL CODE ANN. § 19.02(a)(1), (2) (Vernon 1989).

Paragraphs A and B of the only count of the indictment alleged that on or about September 20, 1991, appellant:

did then and there intentionally and knowingly cause the death of an individual TREMAYNE MILLER, hereinafter referred to as complainant, by SHOOTING THE SAID COMPLAINANT WITH A DEADLY WEAPON, TO–WIT: A FIREARM, NAMELY: A HANDGUN;

And the Grand Jurors aforesaid, upon their oaths aforesaid, do further present in and to said Court that on or about the 20TH day of SEPTEMBER, A.D., 1991, anterior to the presentment of this indictment in the County of Bexar and the State of Texas, ADRIAN YBARRA, hereinafter referred to as defendant, did then and there intending to cause serious bodily injury to an individual, TREMAYNE MILLER, hereinafter referred to as complainant, did then and there commit an act clearly dangerous to human life, to-wit: SHOOTING THE SAID COMPLAINANT WITH A DEADLY WEAPON, TO–WIT: A FIREARM, NAMELY: A HANDGUN, thereby causing the death of the said complainant.

Appellant's complaint appears to be directed to the abstract and definitional part of the trial court's charge wherein the jury was instructed:

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The trial court thus gave the applicable full statutory definitions of the culpable mental states of "intentionally" and "knowingly." TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1974). There was no objection to this portion of the charge nor was there a special requested charge. *See* TEX.CODE CRIM.PROC. ANN. art. 36.14, 36.15 (Vernon Supp.1994).

Thereafter the trial court, tracking the language of the indictment, submitted the following application paragraph to the jury in its charge:

Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, Adrian Ybarra, in Bexar County, Texas, on or about the 20th day of September, 1991, did then and there intentionally or knowingly cause the death of an individual Tremayne Miller by shooting the said Tremayne Miller with a deadly weapon, namely: a firearm, to-wit: a handgun;

or if you believe from the evidence beyond a reasonable doubt that the defendant, Adrian Ybarra, in Bexar County, Texas on or about the 20th day of September, 1991 did then and there intending to cause serious bodily injury to an individual, Tremayne Miller, did commit an act clearly dangerous to human life, to-wit: by shooting the said Tremayne Miller with a deadly weapon, namely: a firearm, to-wit: a handgun, thereby causing the death of the said Tremayne Miller, you will find the defendant guilty of murder.

If you do not so believe, or if you have a reasonable doubt thereof, you will find the defendant not guilty of murder and next consider whether he is guilty of involuntary manslaughter.

There was no objection to this part of the charge nor was a special requested charge presented.

■ Intentional murder is a "result of conduct" offense. *Martinez v. State*, 763 S.W.2d 413, 419 (Tex.Crim.App.1988). This is true under both sections 19.02(a)(1) and 19.02(a)(2) *Lugo–Lugo v. State*, 650 S.W.2d 72, 80 (Tex.Crim.App.1983) (op. on reh'g). It is appellant's contention that the trial court sua sponte should have limited the definition of "intentionally" and "knowingly" in the abstract portion of the court's charge to the result of appellant's conduct.

In *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App.1989), it was pointed out that section 6.03 of the Texas Penal Code delineates three "conduct elements" which may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; (3) the circumstances surrounding the conduct. In *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990), the Court of Criminal Appeals held that inclusion of all the "conduct elements" within the definitions of culpable mental states in the abstract part of the court's charge was inconsequential and not error provided that proper definitions were correctly applied in the application paragraph of the charge. In the instant case, even if the definitional portion of the jury charge regarding the culpable mental states was too broad, the application paragraph of the charge submitting murder under section 19.02(a)(1) or section 19.02(a)(2) properly limited the definitions of culpable mental states to the result of conduct. Under *Kinnamon* there would be no error.

■ Appellant has now called our attention to *Cook v. State*, 884 S.W.2d 485, (Tex. Crim.App.1994), handed down the day before oral arguments in the instant case. *Cook* overruled *Kinnamon* to the extent of any conflict. *Cook* held that it is error for the trial court not to limit in the abstract portion of the court's charge the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense or offenses. *Id.* at 491. The *Cook* court noted that finding error in the jury charge begins rather than ends the appellate court's inquiry. *Id.* The next step is to make an evidentiary review, as well as a review of the record as a whole which may illuminate the actual not just theoretical harm to appellant. *Id.* *See Kelly v. State*, 748 S.W.2d 236, 239 (Tex.Crim.App.1988); *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim.App.1984) (Op. on reh'g). The *Cook* opinion expressly noted that as a part of this harm analysis, the court may consider the degree, if any, to which the culpable mental states, broadly defined in the abstract portion of the charge were limited by the application portions of the jury charge. *Id.* at 492 n. 6. In this regard, the court expressly cited Judge Miller's concurring opinion on rehearing in *Turner v. State*, 805 S.W.2d 423, 432 (Tex.Crim.App.1991); where Judge Miller asserted that *Kinnamon* had been wrongly decided, but concluded that since there had been no objection to the charge and some limiting instructions "(e.g. intentionally caused the death)" in the charge, there was no egregious harm under *Almanza*.[4] *Cf. Hughes v. State*, No. 70, 504, 1994 WL 124305 (Tex.Crim.App., April 13, 1994).

■ In the instant case there was no objection to the court's charge on the basis now asserted on appeal. Therefore, appellant must assert the error was "fundamental" and will obtain a reversal only if the error is so egregious that he has been deprived of a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record as a

---

4. It has long been held that when considering alleged jury charge error, the reviewing court will consider the charge as a whole rather than a series of isolated sentences. *Holley v. State*, 766 S.W.2d 254, 256 (Tex.Crim.App.1986); *Iniquez v. State*, 835 S.W.2d 167, 170 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). This is certainly true in determining whether fundamental jury charge error exists. *Selvage v. State*, 680 S.W.2d 17, 20 (Tex.Crim.App.1984). Review should not be limited to parts of a charge standing alone. *Id.; Inman v. State*, 650 S.W.2d 417, 419 (Tex.Crim. App.1983).

whole. *Id.; Arline v. State,* 721 S.W.2d 348, 351 (Tex.Crim.App.1986).

In applying this standard of review, and viewing the entire jury charge, we find as noted earlier, that the full statutory definitions of "intentionally" and "knowingly" given in the abstract portion of the charge was properly limited by the application paragraph of the charge. Appellant does call our attention to the prosecutor's opening jury argument. The prosecutor did make brief reference to the court's charge in question, now considered erroneous in part in light of the recent decision in *Cook.* Normally, it is proper, certainly not error, for the state to quote or paraphrase the jury charge, so long as the prosecutor's argument as to the law is not contrary to the court's charge. *Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App. 1990); *Short v. State,* 511 S.W.2d 288, 291 (Tex.Crim.App.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975).

The prosecutor paraphrased the abstract portion of the court's charge in question and briefly argued in his opening statement that the evidence supported the definitions in the charge. There was no objection to the argument now complained of and the subject matter was not mentioned again.

Appellant's counsel argued that appellant was guilty only of involuntary manslaughter and that appellant would have pleaded guilty to that offense, if he had had the opportunity. In closing argument, the prosecutor reviewed the evidence urging that it was sufficient to sustain a conviction under either section 19.02(a)(1) or section 19.02(a)(2) of the Texas Penal Code as the jury was authorized to do under the application paragraph of the court's charge which limited the culpable mental states to the facts.

Viewing the jury argument in its entirety, we conclude that unobjected-to argument taken in context did not call upon the jury to convict appellant merely because he intended to engage in the conduct that caused death without finding that he specifically intended that death result from that conduct. *See* *Morrow v. State,* 753 S.W.2d 372, 375–76 n. 3. (Tex.Crim.App.1988).

In viewing the entire record as required by *Almanza,* we find that there was no objection to the abstract portion of the charge defining the culpable mental states, that language of the application paragraph limited the abstract portion of the charge, that there was no objection to the jury argument now complained of and taken out of context, and that the complained of argument considered in light of the entire jury argument does not present error. We conclude that the error in the jury charge did not result in egregious harm so as to deny appellant a fair and impartial trial. Tex.Code Crim.Proc.Ann. art. 36.19 (Vernon 1981); *Ford v. State,* 870 S.W.2d 155, 161 (Tex.App.—San Antonio 1993, pet. ref'd). Appellant has not satisfied his burden with regard to charge error. *Renfro v. State,* 827 S.W.2d 532, 534 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd).

Appellant relies on *Banks v. State,* 819 S.W.2d 676 (Tex.App.—San Antonio 1991, pet ref'd). *Banks* is similar to the instant case, but *Banks* is distinguishable. *Banks* involved a conviction for injury to a child which was reversed. Like murder, injury to a child is a result-oriented crime. *Id.* at 678. Section 19.02 of the Texas Penal Code does not employ the confusing "engage in conduct" language formerly found in section 22.04 under which *Banks* was prosecuted. *See* Tex.Penal Code Ann. § 22.04 (Vernon 1989)[5] *Schumacker v. State,* 814 S.W.2d 871, 874 (Tex.App.—Austin 1991, no pet.). In *Banks,* there was no objection to the charge. Unlike the instant case, the error in *Banks* in failing to limit the culpable mental states to the result of the conduct permeated both the abstract and the application portions of the court's charge. The error in the *Banks* charge was compounded by the prosecutor's argument which was far more direct and harmful than the argument in the instant case. In addition, the *Banks* trial court submitted verdict forms to the jury using the "engaging in conduct" language. We have no such problem in the instant case. Moreover, the reversal in *Banks* did not rest alone

---

5. Act of May 29, 1989, 71st Leg.R.S. ch. 357, § 1 1989 TEX.GEN.LAWS 1441 since amended.

Now *see* TEX.PENAL CODE ANN. § 22.04 (Vernon Supp.1994); § 22.04 (Vernon 1994).

upon jury charge error, but also upon the denial of effective assistance of counsel.

Since the *Cook* decision, the Court of Criminal Appeals has held that in a murder prosecution under section 19.02(a)(1) of the Texas Penal Code, the Court of Appeals erred, in light of *Cook*, in holding that the trial court did not err in refusing the defense request to limit the culpable mental states of intentional and knowing in the abstract portion of the charge, but in view of the harm analysis under *Almanza* conducted by the court of appeals, the petition for discretionary review would be refused. *Navarro v. State*, 891 S.W.2d 648 (Tex.Crim.App.1994). This, we have done in the instant case. With this background, and in light of our harm analysis, we overrule point of error two.

In points of error three, four and five, appellant contends that the trial court erred in overruling his requested jury instructions on voluntary manslaughter, criminally negligent homicide, and aggravated assault.

There is a two-pronged test for determining whether a jury must be charged on a lesser included offense. It has become known as the "Royster" or "Royster–Aguilar" test. *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex.Crim.App.1985); *Royster v. State*, 622 S.W.2d 442, 447 (Tex.Crim.App.1981). First, the lesser included offense must be included within the proof necessary to establish the offense charged. Second, there must be some evidence in the record that if the defendant is guilty, he is guilty only of the lesser offense. *Ross v. State*, 861 S.W.2d 870, 876 (Tex.Crim.App.1992) (op. on reh'g); *Jones v. State*, 833 S.W.2d 118, 127 (Tex. Crim.App.1992); *Creel v. State*, 754 S.W.2d 205, 210 (Tex.Crim.App.1988).

Recently, the Court of Criminal Appeals has modified the second prong to read "second, some evidence must exist in the record *that would permit a jury rationally to find* that if the defendant is guilty, he is guilty only of the lesser offense." *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App. 1993) (emphasis in original). "In applying the two-prong test, the trial court should make a determination as to whether the evidence of the lesser offense would be sufficient for a jury rationally to find that the defendant is guilty only of that offense, *and not the greater offense." Id.* (emphasis added). In adhering to the Royster test, the *Rousseau* Court rejected the federal standard but borrowed from it. The federal standard set forth in *Cordova v. Lynaugh*, 838 F.2d 764 (5th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 932 (1988), provides that a lesser included offense instruction should be given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense *and acquit him of the greater." Cordova*, 838 F.2d at 767 (emphasis added). In *Rousseau*, the Court of Criminal Appeals noted that it was not the intent of the court to change the substantive test of *Royster*, but only to interpret and clarify existing law. *Rousseau*, 855 S.W.2d at 673, n. 4.

In determining whether the trial court erred in failing to give a charge on a lesser included offense, all of the evidence presented by the State and the defendant must be considered. *Havard v. State*, 800 S.W.2d 195, 216 (Tex.Crim.App.1989) (op. on reh'g); *Dowden v. State*, 758 S.W.2d 264, 269 (Tex.Crim.App.1988). Entitlement to a jury instruction on a lesser included offense must be made on a case-by-case basis according to the particular facts. *Livingston v. State*, 739 S.W.2d 311, 336 (Tex.Crim.App.1987), *cert. denied* 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988); *Broussard v. State*, 642 S.W.2d 171, 173 (Tex.Crim.App.1982).

Voluntary manslaughter, criminally negligent homicide, and aggravated assault may be lesser-included offenses of murder. *See* TEX.CODE CRIM. PROC. ANN. art. 37.09 (Vernon 1981); *Nobles v. State*, 843 S.W.2d 503, 510–12 (Tex.Crim.App.1992); *State v. Lee*, 818 S.W.2d 778, 782 (Tex.Crim.App. 1991); *Dowden v. State*, 758 S.W.2d 264, 270 (Tex.Crim.App.1988); *Thomas v. State*, 699 S.W.2d 845, 847 (Tex.Crim.App.1985); *Ethridge v. State*, 648 S.W.2d 306, 307 (Tex. Crim.App.1983).

Section 19.04(a) of the Texas Penal Code provides in part: "A person commits [voluntary manslaughter] ... if he causes the death of an individual under circumstances

that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.04(a) (Vernon 1989) (applicable herein). *See now* § 19.02(a)(1)(2) and § 19.02(d) (Vernon 1994). (Now an affirmative defense presented at punishment stage).

■ "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.04(b)(c) (Vernon 1989) (applicable herein).

■ "Sudden passion" has been described as an agitated and excited state of mind at the time of the killing caused by the direct provocation by the deceased or victim. *See Hobson v. State,* 644 S.W.2d 473, 478 n. 10 (Tex.Crim.App.1983). Passion which is solely the result of former provocation is insufficient. *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Crim.App.1987); *Nance v. State,* 807 S.W.2d 855, 860 (Tex.App.—Corpus Christi 1991, pet. ref'd). With respect to adequate cause, not all testimony of anger or fear entitles a defendant to a voluntary manslaughter charge. *Nance,* 807 S.W.2d at 860.

■ Without reiterating the facts the evidence does not establish sudden passion arising from an adequate cause at the time of the killing. We find that the evidence was not sufficient for a jury rationally to find appellant guilty only of voluntary manslaughter and not murder under either section 19.02(a)(1) or (a)(2). *Rousseau v. State,* 855 S.W.2d at 672–73. The trial court did not err in refusing to submit the issue of voluntary

manslaughter. Point of error three is overruled.

A person commits an offense if the person commits an assault as defined in section 22.01 of the Texas Penal Code [6] and the person causes serious bodily injury to another. TEX. PENAL CODE ANN. § 22.02(a)(1) (Vernon Supp.1994). Aggravated assault, as earlier noted, may be a lesser included offense of murder. *See Cato v. State,* 534 S.W.2d 135, 137 (Tex.Crim.App.1976); *Davis v. State,* 822 S.W.2d 207, 213 (Tex.App.— Dallas 1991, pet. ref'd).

Appellant was charged with murder under sections 19.01(a)(1) and 19.02(a)(2). TEXAS PENAL CODE ANN. §§ 19.02(a)(1), 19.02(a)(2) the State was required to prove that appellant intentionally or knowingly caused the death of Miller as alleged in the indictment. Under section 19.02(a)(2), the State was required to prove that appellant intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused Miller's death.

■ Appellant objected to the court's charge for failing to include the lesser offense of "aggravated assault—serious bodily injury." He appears to argue his testimony (that he did not intend to hit Miller or to kill him) raised the issue of aggravated assault. Intent, of course, may be inferred from the acts, words, and conduct of the accused. *Dues v. State,* 634 S.W.2d 304, 305 (Tex. Crim.App.1982). The specific intent to kill may be inferred from the use of a deadly weapon. *Flanagan v. State,* 675 S.W.2d 734, 744 (Tex.Crim.App.1982). A firearm, as alleged in the instant indictment, is a deadly weapon. TEX. PENAL CODE ANN. § 1.07(11) (Vernon 1974). The .38 caliber handgun used in this case is a firearm, a deadly weapon.

While we agree that an instruction on the lesser included offense of aggravated assault can no longer be withheld because a deadly weapon per se is used, *Harrell v. State,* 659 S.W.2d 825, 826 (Tex.Crim.App.1983), "we

---

6. Section 22.01 (assault) of the Texas Penal Code provides in part:

"(a) a person commits an offense if the person (1) intentionally, knowingly, or recklessly causes bodily injury to another."

TEX.PENAL CODE ANN. § 22.01(a)(1) (Vernon 1989). *See now,* § 22.01(a)(1) (Vernon 1994).

are not prepared to say that an instruction is mandated where the evidence fails to suggest that appellant, if guilty, is guilty only of aggravated assault. That is, while the instruction can no longer be denied because a deadly weapon is used, still, there must be evidence to warrant submission of the instruction initially." *Pimentel v. State*, 710 S.W.2d 764, 770 (Tex.App.—San Antonio 1986, pet. ref'd).

Appellant's testimony that he did not intend to kill Miller, raises an issue as to his culpable mental state only if taken alone and out of context. The statement loses its force within the context of the evidence as a whole. A defendant's statement that he did not intend to kill cannot be plucked out of the record and examined in a vacuum. *Godsey v. State*, 719 S.W.2d 578, 584 (Tex.Crim.App. 1986). The instant case is unlike cases in which part of a defendant's testimony could be reasonably believed by a jury *in the context of the facts* so as to support a jury instruction on the lesser included offense. *Id.* Taken alone, appellant's statement cannot fit within the context of the other facts concerning the offense. "As such it cannot be [the] proffered and introduced evidence which, when considered with all of the evidence in the case, amounts to some evidence that the defendant is guilty only of a lesser offense." *Id.* at 585 (Miller, J. concurring).

In carefully reviewing all of the evidence, we find that the evidence was insufficient for a jury rationally to find appellant guilty only of aggravated assault *and not the greater offense. Rousseau*, 855 S.W.2d at 672–73. The trial court did not err in refusing to charge on aggravated assault. Point of error four is overruled.[7]

▌▌▌▌ "A person commits an offense if he causes the death of an individual by criminal negligence." TEX. PENAL CODE ANN. § 19.07(a) (Vernon 1989) now 19.05(a) (Vernon 1994). Section 6.03(d) of the Texas Penal Code defines criminally negligent conduct.[8] A person commits involuntary manslaughter if he recklessly causes the death of an individual. TEX. PENAL CODE ANN. §§ 19.05(a)(1) (Vernon 1989), 6.03(c) (Vernon 1974).[9] The essence of criminal negligence, and the factor that distinguishes it from involuntary manslaughter, is the failure of the actor to perceive the risk created by his conduct. *Mendieta v. State*, 706 S.W.2d 651, 652 (Tex.Crim.App.1986); *Lewis v. State*, 529 S.W.2d 550, 553 (Tex.Crim.App.1975). In order for a defendant to be entitled to a jury charge on involuntary manslaughter or criminally negligent homicide, the record must contain "some evidence" that the accused did not intend the resulting death or know that it was reasonably certain to occur. If such evidence is present, the record must then be examined to see if it indicates whether the accused was *aware* or *unaware* of the risk that his conduct could result in the unintentional killing of the deceased.

---

7. In *Bryant v. State*, 816 S.W.2d 554, 555 (Tex. App.—Fort Worth 1991, no pet.), the defendant was charged with murder under both sections 19.02(a)(2) as in the instant case. The court held that if the evidence raised facts showing that the defendant intentionally or knowingly shot his wife causing her death but did not intend to kill her, those facts while consistent with aggravated assault also coincide with those of murder under section 19.02(a)(2). Consequently, the charge on aggravated assault was preempted by the charge given based on section § 19.02(a)(2). Likewise, if the evidence raised facts showing the defendant recklessly shot his wife, causing her death, these facts are consistent with aggravated assault but coincide with involuntary manslaughter. This latter offense is committed when one recklessly causes the death of an individual. TEX PENAL CODE ANN. § 19.05(a)(1) (Vernon 1994). Thus, any charge on aggravated assault was preempted by the charge given on involuntary manslaughter.

8. A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he *ought to be aware of a substantial and unjustifiable risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes *a gross deviation from the standard of care that an ordinary person would exercise* under all the circumstances as viewed from the actor's standpoint.
TEX.PENAL CODE ANN. § 6.03(d) (Vernon 1974) (emphasis added). (See now § 6.03(d) (Vernon 1994).

9. If the actor is aware of the risk of unintentionally causing the death of an individual, but nonetheless pursues the course of action and a death results, he is guilty of involuntary manslaughter. (*See now* § 19.04(a)(b) (Vernon 1994).

An act that unintentionally causes the death of another is, almost by definition, an act that creates a *risk* of death. Merely because there is some evidence that defendant did not intend the resulting death and was not aware that it was reasonably certain to occur does not, of course, determine whether he *perceived the risk* that an unintended death might occur. *See Still v. State,* 709 S.W.2d 658, 661 (Tex.Crim.App. 1986). If a reasonable inference may be drawn from the evidence that the defendant was aware of that risk, a charge on involuntary manslaughter should be submitted. If a reasonable inference may be drawn that he was *not* aware of that risk, a charge on criminal negligence should be submitted. Before a charge on criminally negligent homicide is required, the record must contain evidence showing an unawareness of the risk. *Mendieta,* 706 S.W.2d at 653.

In the instant case, the trial court submitted a charge on involuntary manslaughter, but refused the charge on criminally negligent homicide. In *Thomas v. State,* 699 S.W.2d 845, 850 (Tex.Crim.App.1985), the court held that all the attendant circumstances "from which the defendant's mental state can be inferred must be collectively examined." The court also held, however, that an inference of awareness of the risk is effectively created by a continuation of three factors: (1) the defendant knows a gun is loaded, (2) he is familiar with guns and their potential for injury, and (3) he points the gun at another person. Although other factors should be considered, they would not necessarily alter the defendant's awareness of the risk.

In the instant case, although appellant testified that he did not intend to kill the deceased and shot to scare him, he also testified that he knew that it was dangerous to have a gun and dangerous to shoot at someone; that he had purchased the handgun and bullets; that he had test-fired the weapon; that he knew on the occasion in question that he was shooting the loaded gun in the direction of the deceased; and that when you point a gun at somebody's head and squeeze the trigger, it is likely to kill the individual. All three of the elements creating the *Thomas* inferences are present, and other factors do not alter appellant's awareness of the risk. The trial court did not err in refusing to submit the offense of criminally negligent homicide. *See Miranda v. State,* 739 S.W.2d 473, 475 (Tex.App.—Corpus Christi 1987, no pet.). Point of error five is overruled.

In points of error six and seven, appellant contends that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Texas Constitution.

A defendant in a Texas criminal case is entitled to reasonably effective assistance of counsel. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Crim.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must (1) demonstrate that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel; and (2) show that deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. In this connection, a strong presumption exists that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689, 104 S.Ct. at 2065. "Prejudice," however, is demonstrated when the convicted defendant shows a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different. *Id.* at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Ex parte Guzmon,* 730 S.W.2d 724, 733 (Tex.Crim.App. 1987) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068). "The bench mark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S.

at 686, 104 S.Ct. at 2063; *Jimenez v. State,* 804 S.W.2d 334, 338 (Tex.App.—San Antonio 1991, pet. ref'd).

■ The *Strickland* standard has been adopted in Texas for resolving allegations of ineffective assistance of counsel under both the federal and state constitutions. *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim. App.1986); *see also Washington v. State,* 771 S.W.2d 537, 545 (Tex.Crim.App.1989), *cert. denied,* 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989); *Holland v. State,* 761 S.W.2d 307, 314 (Tex.Crim.App.1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989). At least, this is true as to the guilt/innocence stage of a Texas bifurcated criminal case. At the penalty stage of a bifurcated non-capital case, a different standard applies for resolving allegations of ineffective assistance of counsel. *Ex parte Cruz,* 739 S.W.2d 53, 59 (Tex.Crim.App.1987) held that the second prong of the *Strickland* test is not applicable to the punishment stage of a non-capital felony trial and that the standard to be applied is that set forth in *Ex parte Duffy,* 607 S.W.2d 507, 514 n. 14 (Tex. Crim.App.1980) ("counsel reasonably likely to render and rendering effective assistance"). *See also Craig v. State,* 825 S.W.2d 128, 130 (Tex.Crim.App.1992); *Ex parte Walker,* 794 S.W.2d 36, 37 (Tex.Crim.App.1990); *Ex parte Walker,* 777 S.W.2d 427, 431 (Tex.Crim.App. 1989).[10]

■ Whether the *Strickland* or the *Duffy* standard has been met is to be judged by the "totality of the representation" rather than by isolated acts or omissions of trial counsel, and the tests or standards are to be applied at the time of the trial, not through hindsight. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Crim.App.1990); *Cruz,* 739 S.W.2d at 58; *Wilkerson,* 726 S.W.2d at 548.

■ Other considerations are applicable to both standards. The burden of proving ineffective assistance of counsel by a preponderance of evidence rests upon the convicted defendant. *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Crim.App.1985). Alle-

gations of ineffective assistance will be sustained only if they are firmly founded. *Smith v. State,* 676 S.W.2d 379, 385 (Tex. Crim.App.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2173, 85 L.Ed.2d 490 (1985). The particular facts and circumstances of each case must be considered in any claim of ineffective assistance. *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). Neither the *Strickland* nor *Duffy* standards have been interpreted to mean that an accused is entitled to errorless or perfect counsel. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Crim.App.1986); *Mercado v. State,* 615 S.W.2d 225, 228 (Tex.Crim. App.1981). The fact that another attorney might have pursued a different course of action at trial will not support a finding of ineffectiveness. *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Crim.App.1983); *Banks v. State,* 819 S.W.2d 676, 681 (Tex.App.—San Antonio 1991, pet. ref'd).

In support of his claim that he was deprived of the effective assistance of counsel, appellant cites the following examples of counsel's deficient performance at the guilt/innocence stage of the trial: (1) failure to object to extraneous offenses; (2) failure to object to the erroneous offenses jury charge; and (3) failure to have the voir dire examination of the jury panel recorded by the court reporter.

■ We shall consider these in reverse order. Mere failure of counsel to request recordation of the voir dire examination is not ineffective assistance of counsel per se. *Wills v. State,* 867 S.W.2d 852, 857 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). "Some injury resulting from the failure to request transcription must be raised by appellant on appeal." *Lopez v. State,* 838 S.W.2d 758, 760 (Tex.App.—Corpus Christi 1992, no pet.). Without a showing of harm, we cannot hold that the mere failure to request a voir dire recordation was ineffective assistance. *See Gonzales v. State,* 732 S.W.2d 67, 68 (Tex.App.—Houston [1st Dist.] 1987, no pet.). The third prong of appellant's

---

**10.** Interestingly enough, the Court of Criminal Appeals has held that the *Strickland* two-prong standard applied to both stages of a capital mur-

der case. *Black v. State,* 816 S.W.2d 350, 356 (Tex.Crim.App.1991).

claim is without merit. *Wills,* 867 S.W.2d at 857.

Appellant's claim that counsel failed to object to the erroneous jury charge relates to the definitions of the culpable mental states in the abstract portion of the charge. This matter was discussed at some length in the second point of error. The culpable mental states were limited by the application paragraph of the charge. Under the outstanding case law at the time the court's charge was given the limitation in the application paragraph rendered "irrelevant" the abstract or definitional portion with respect to the culpable mental states. *Kinnamon,* 791 S.W.2d at 89. Counsel had no crystal ball to forecast the overruling of *Kinnamon* and its progeny by *Cook.* If the court's charge was not erroneous under the existing caselaw, it would be difficult to tag counsel's omission as ineffective assistance per se. *See McFarland v. State,* 845 S.W.2d 824, 844 (Tex.Crim.App. 1992); *Mooney v. State,* 817 S.W.2d 693, 698 (Tex.Crim.App.1991). The second prong of appellant's claim of ineffectiveness is overruled.

■■■■ Appellant has split the first prong of his ineffective assistance claim into three parts. First, appellant claims that his counsel failed to object to evidence that appellant commonly carried a handgun. This testimony was elicited from the two Montemayor brothers and Jesse Chipatecua, eyewitnesses to the fatal shooting, as well as from David Tidwell and Hector Caballero. All five witnesses were appellant's schoolmates and testified that they had seen appellant with the gun on one or more occasions before the complained-of testimony was elicited. Failure to object and exclude inadmissible testimony is not necessarily ineffective assistance of counsel. *See McFarland v. State,* 845 S.W.2d at 843; *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Crim.App.1984). Neither is counsel rendered ineffective merely because counsel may have made a mistake during trial and other counsel may have tried the case differently. *Ingham,* 679 S.W.2d at 509; *Wartel v. State,* 830 S.W.2d 757, 761 (Tex.App.—Houston [1st Dist.] 1992, no pet.). Hindsight cannot be used in evaluating counsel's performance. *Miniel v. State,* 831

S.W.2d 310, 323 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 245, 121 L.Ed.2d 178 (1992). Effective assistance of counsel does not mean error-free counsel. *West v. State,* 790 S.W.2d 3, 5 (Tex.App.— San Antonio 1989, pet. ref'd).

■■■ Next, appellant contends that his trial counsel was ineffective because he failed to object to the admission of an extraneous offense of criminal mischief. Appellant directs our attention to the testimony of thirteen year old Tiffany McCumber. This witness testified that at the time of the fatal shooting she heard a shot and saw an individual with a gun fleeing the scene. McCumber gave a statement to the police. She related that about a week after the shooting "we started getting threatening phone calls." The prosecutor's "who" question was interrupted by the objection of appellant's counsel as to "materiality," "hearsay," and "we don't know who it was." When the prosecutor offered "to tie it up," counsel asked for a bench conference. The bench conference was not recorded. The record is silent on any adverse ruling on appellant's objections. Thereafter, without objection, McCumber reaffirmed the fact of threatening telephone calls and stated a red "c" was spray-painted on the door of the apartment where she lived. McCumber thought the red "c" was a gang symbol as "the Crypts" used a red "c." McCumber stated that she and her parents moved. When asked "why or where," appellant's counsel objected: "This is certainly not material. It's highly inflammatory and we object. We have objected heretofore, and [the] court has ruled against us. I'll say that for the record." The objection was overruled.

It appears that counsel failed to realize that the bench conference was not being recorded and that any ruling on his objection would not be reflected in the record rather than, as appellant claims, failing to object. Appellant relies solely upon the testimony elicited immediately after the bench conference. In his brief, appellant cites only *Castillo v. State,* 739 S.W.2d 280, 289 (Tex.Crim. App.1987) for the proposition that an extraneous offense is not admissible unless it is shown the defendant was the perpetrator of

the offense. If it can be said that counsel failed to object on this ground despite his "we don't know who it was" objection, appellant has failed to show how this isolated omission to object rendered his trial counsel ineffective under the *Strickland* standard.

Lastly, appellant contends that his counsel failed to object to evidence concerning gang affiliation. McCumber testified that before the shooting that she had not known appellant or heard anything about him. When asked if she had ever found out that appellant was in a gang, she responded "I've heard ...". Her answer was cut short by defense counsel's prompt objection which was sustained. This is directly contrary to appellant's claim.

■ Appellant notes that during his own cross-examination, the prosecutor revisited the gang theme. During this interrogation, appellant expressly denied belonging to a gang or having anything to do with the symbol painted on the McCumber door. Apparently, appellant contends that his counsel should have objected to the questions which elicited these denials.

■ Allegations of ineffective assistance will be sustained only if they are firmly founded. *Smith*, 676 S.W.2d at 385. The burden of proving ineffective assistance of counsel rests upon the appellant by a preponderance of evidence. *Cannon v. State*, 668 S.W.2d 401, 403 (Tex.Crim.App.1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *See Holland v. State*, 761 S.W.2d 307, 320 (Tex.Crim.App.1988), *cert. denied*, 489 U.S. 1091, 109 S.Ct. 1560, 103 L.Ed.2d 863 (1989).

Viewing the totality of the representation, we conclude that appellant has failed to meet the two-prong test of *Strickland*. Points of error six and seven are overruled.

In the eighth point of error, appellant contends that the "trial court erred by admitting evidence of a prior shooting [11] which was not shown to have been committed by appellant and which was not relevant to the charge of murder."

In his ninth point of error, appellant complains that the trial court erred in admitting the same evidence because the evidence was prohibited by Rule 404(b) of the Texas Rules of Criminal Evidence.

These points of error are directed to the testimony of Detective Tom Fulcher who had investigated the instant murder charge. Fulcher related that during the investigation he had received information about shots being fired in a nearby apartment the previous Saturday night. Fulcher revealed that two bullet slugs were discovered in the attic of the apartment. They were compared and found to have been fired by the same firearm used to kill the deceased.

■ Without detailing step by step the admission of this evidence, whether over objection, without objection, or without an adverse ruling on an objection, we make several observations. We find no trial objection on the ground now urged on appeal that the evidence was admitted without a showing that appellant committed the "prior shooting," nor do we find an express objection on the basis of Rule 404(b). When trial objections do not comport with the complaints on appeal, nothing is presented for review. *McFarland v. State*, 845 S.W.2d at 838; *Fuller v. State*, 827 S.W.2d 919, 928 (Tex. Crim.App.1992); *Miranda v. State*, 813 S.W.2d 724, 737 (Tex.App.—San Antonio 1991, pet. ref'd).

■ Moreover, and most importantly, the same testimony as to the discovery of the bullet slugs and the results of the ballistics test were subsequently elicited without objection on cross-examination of a firearms expert called by the defense. A specific objection must be made each time an offer of allegedly inadmissible evidence is offered in order to preserve any error for review. *Purtell v. State*, 761 S.W.2d 360, 368 (Tex.Crim. App.1988), *cert. denied*, 490 U.S. 1059, 109

11. Appellant has reference to a prior firing of the murder weapon, not a prior shooting of an individual.

S.Ct. 1972, 104 L.Ed.2d 441 (1989); *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App. 1984). In addition, the improper admission of evidence is not reversible error when the same facts are proved by other unobjected-to testimony. *Anderson v. State,* 717 S.W.2d 622, 626–27 (Tex.Crim.App.1986); *Miranda,* 813 S.W.2d at 739. Points of error eight and nine are overruled.

In his tenth point of error, appellant complains that the "trial court erred by admitting evidence of threats to a witness which were not shown to have been committed by appellant and which were not relevant to the charge of murder." In his eleventh point of error, appellant urges that the trial court erred in admitting this same evidence which was prohibited by Rule 404(b) of the Texas Rules of Criminal Evidence.

As observed earlier, thirteen year old Tiffany McCumber testified for the State. On the day in question she and her friends were on their way to play football when she heard a shot. McCumber described the person with a gun whom she saw running from the scene. She later gave a written statement to the police. McCumber made no in-court identification of appellant.

McCumber related that about a week after the alleged offense "we [12] started getting threatening phone calls." When the prosecutor attempted to elicit who had made the telephone calls, appellant objected on the grounds that it was "not material," "we don't know who it was," and "hearsay." When the prosecutor offered to "tie it up," appellant requested a bench conference. The bench conference was not recorded. There is nothing in the record to show that appellant obtained a ruling, adverse or otherwise, on his objections. After the bench conference, McCumber testified, without objection, that in addition to the threatening telephone calls "to get us," a red "c" was spray-painted on "our door," which she believed to be a gang symbol "or something." She knew "The Crypts" used the red "c." McCumber then testified that "they" moved out of the apartment where she had lived. The prosecutor asked "why or where" she moved. Appellant's objections directed to this question were overruled. McCumber then stated she and her parents moved to Kelly Air Force Base.

 Appellant now claims that that evidence of threats to the witness was not admissible because he was not shown to be the perpetrator of the extraneous offense. *See Castillo v. State,* 739 S.W.2d at 289. This is true, but neither this complaint nor a claim of violation of Rule 404(b) comport with the trial objections. Nothing is presented for review. *Rezac v. State,* 782 S.W.2d 869, 870 (1990); *Thomas v. State,* 723 S.W.2d 696, 700 (Tex.Crim.App.1986).

 If it can be argued otherwise, we observe that the trial objections as to the threats were not pursued until an adverse ruling was obtained. *Again,* nothing is presented for review. *Harris v. State,* 827 S.W.2d 949, 963 (Tex.Crim.App.1992); *Fuller,* 827 S.W.2d at 926. The testimony following the bench conference was admitted without objection. *See* Tex.R.App.P. 52(a). Moreover, a specific objection must be made each time an offer of inadmissible evidence is offered in order to preserve error for review. *Purtell,* 761 S.W.2d at 368.

 McCumber testified that she did not know appellant prior to the shooting, had not heard anything about him, had not seen him around her apartment, and had not knowingly received a telephone call from him. She did not know who made the telephone calls in question the week after the shooting. Appellant testified that he was confined for three months after the shooting and that he had limited use of a telephone. He could only telephone his lawyer or his mother. His custodian did the dialing. Appellant denied making any telephone calls to McCumber. Even if the matters complained of were before the court for review, no reversible error appears. *See* Tex.R.Crim.Evid. 103(a); Tex. R.App.P. 81(b)(2). Points of error ten and eleven are overruled.

The judgment is affirmed.

---

12. The record reflects that McCumber lived with her mother and stepfather.