# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00612-CV

**Heron Esteven Pena, Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT
### NO. D-1-FM-10-003771, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Heron Esteven Pena appeals the trial court's order terminating his parental rights to his minor child, A. P.  In his sole issue on appeal, Pena argues that he was denied effective assistance of counsel because his counsel waived the recording of voir dire and failed to request a continuance when it became apparent that Pena would not be present at trial.  We affirm the trial court's order terminating Pena's parental rights.

## BACKGROUND

Pena was married to Amy Pena, A. P.'s mother.[1]  Pena lived with Amy, A. P., and Amy's two other children, H. M. and A. M.  Two other adult males occasionally stayed in Pena's home, one of whom was H. M. and A. M.'s father.  In February of 2010, the Texas Department of

---

[1]  To avoid confusion, we will refer to Amy Pena by her first name.

Family and Protective Services (the "Department") received a report from law enforcement authorities concerning the alleged neglectful supervision of H. M. and A. M.[2] The Department learned that four-year-old H. M. and two-year-old A. M. were found unsupervised in the parking lot of an apartment complex at 5:00 in the morning, while the temperature outdoors was approximately 30° Fahrenheit.

Police arrived at the scene before the Department's investigator. The police determined that neither Pena nor Amy was home, and they discovered drug paraphernalia in plain view within their apartment. An investigator with the Department arrived shortly thereafter. When Amy returned, she explained that she and Pena left H. M. and A. M. asleep in the apartment while she went to the hospital to have a toothache treated. Amy was seven months' pregnant with A. P. at the time. Pena confirmed that he smoked marijuana to relieve his stress, but denied selling it.

Less than one month later, the Department received another call from law enforcement authorities regarding this case. The Department learned that Pena had been arrested for assaulting Amy. An eyewitness stated that Pena was "severely beating" Amy in the common hallway of their apartment building in plain view of other residents. Amy was eight months' pregnant with A. P. at the time, and she gave birth to A. P. five weeks after this alleged assault.

The trial court subsequently issued an emergency temporary order naming the Department as H. M., A. M., and A. P.'s temporary sole managing conservator and appointed a guardian ad litem for the children. *See* Tex. Fam. Code Ann. §§ 107.012, 153.371 (West 2008).

---

[2] The facts recited herein are taken from the testimony and evidence admitted at the trial to terminate Pena's parental rights.

2

Amy subsequently voluntarily relinquished her parental rights to all three of her children. H. M. and A. M.'s father also relinquished his parental rights.

The Department, in accordance with the trial court's order, provided Pena with a "family service plan" through which he could work toward regaining custody of A. P. *See id.* § 263.106 (West 2008). Pena was required to participate in psychological evaluations, counseling, drug testing, and supervised visits. Pena did not attend his first four scheduled psychological evaluations, but did eventually receive a psychological evaluation. He was discharged from counseling due to "copious absences" and he refused to submit to drug screenings after testing positive for marijuana. Pena did "somewhat" attend visitations with A. P.; the Department's case worker estimated that he would attend two to three out of every four sessions.

In August 2011, a jury trial was conducted to determine whether Pena's parental rights should be terminated. During the voir dire of prospective jurors, Pena walked out of the courtroom and did not return for several days. During the trial, Pena's counsel informed the trial court that she had spoken with Pena and explained the importance of being present at the proceedings, but he nonetheless told her that he would be late due to unspecified transportation and health issues. The trial proceeded without Pena. The Department called twelve witnesses, including the psychologist who diagnosed Pena with paranoid schizophrenia. The Department also introduced evidence that Pena was violent, erratic, a habitual drug user, and that he had a series of criminal convictions. After the Department rested, Pena's counsel requested a recess for the day so that Pena could have the opportunity to testify the following morning. The trial court denied Pena's counsel's request and instructed her that she could rest, but that the court would afford her an opportunity to request that the case be reopened the following morning, should Pena be present.

3

Pena failed to appear at court the following morning, and the Department and Pena's counsel gave their closing arguments. Pena arrived in court in time for the jury to deliver its findings. The jury found by clear and convincing evidence that the statutory grounds for termination existed and that termination of Pena's parental rights was in A. P.'s best interest. *See id.* § 161.001(1)–(2) (West 2008). The trial court issued an order terminating Pena's parental rights. This appeal followed. On appeal, Pena asserts that he was denied effective assistance of counsel at the trial to terminate his parental rights. Pena also claims that if this Court reverses the trial court's order terminating his parental rights, we should also reverse the trial court's order appointing the Department as sole managing conservator of A. P.

## STANDARD OF REVIEW

A parent's statutory right to counsel in a parental-rights termination proceeding includes a guarantee that counsel will perform effectively. *See In re B.G.*, 317 S.W.3d 250, 253–54 (Tex. 2010). In reviewing the effectiveness of counsel in a parental-rights proceeding, the Texas Supreme Court has adopted the two-prong test set forth in *Strickland v. Washington*. *See In re M.S.*, 115 S.W.3d 534, 545 (Tex. 2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Under *Strickland*, in order to succeed on an ineffective-assistance-of-counsel claim, an appellant must show by a preponderance of the evidence that (1) his counsel's performance was deficient and (2) the appellant was prejudiced by that deficient performance. *See id.* (citing *Strickland*, 466 U.S. at 687). It is Pena's duty to bring forth a record which affirmatively demonstrates that his counsel was ineffective. *See In re M.S.*, 115 S.W.3d at 545–46; *Mallet v. State*, 65 S.W.3d 59, 53 (Tex. Crim. App. 2001).

4

Our review of counsel's performance must be highly deferential; we presume that counsel makes all significant decisions in the exercise of reasonable judgment. *In re J. O. A.*, 283 S.W.3d 336, 343 (Tex. 2009). Counsel's performance is deficient when it falls "below an objective standard of reasonableness" based on prevailing professional norms. *See id.*; *see also Strickland*, 466 U.S. at 689. Effectiveness of counsel usually cannot be adequately examined based on the record from the trial court in a direct appeal; this type of record is best developed on motion for new trial. *See Schwertner v. Texas Dep't of Family & Protective Servs.*, No. 03-11-00347-CV, 2001 Tex. App. LEXIS 8654, at *6–7 (Tex. App.—Austin Oct. 25, 2011, no pet.) (mem. op.). Without a record, finding counsel constitutionally deficient would require us to assume that there was no sound trial strategy, which we are not permitted to do unless the counsel's decision was "so outrageous that no competent attorney would have engaged in it." *See id.* (internal citations omitted).

Furthermore, an appellant must demonstrate that he was prejudiced by his counsel's deficient performance. In order to demonstrate prejudice, the appellant must show there is a reasonable probability that, but for his counsel's deficient performance, the outcome of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. A reasonable probability is one sufficient to undermine our confidence in the outcome of the proceedings. *Id.* at 687.

## DISCUSSION

On appeal, Pena argues that his trial counsel's performance was deficient in two respects. First, he claims that his trial counsel was deficient for waiving a recording of voir dire because the waiver resulted in a lack of a record upon which he could appeal. Second, Pena asserts that his trial counsel was deficient for failing to request a continuance when it became clear that Pena

5

would not be present at trial. Pena did not raise this ineffective-assistance-of-counsel claim in his motion for new trial, and his counsel was not given an opportunity to explain her conduct. Therefore, we will not find Pena's counsel to be deficient unless her conduct was "so outrageous that no competent attorney would have engaged in it." *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Effectiveness is judged by the "totality of the representation," rather than by an isolated act or omission. *See Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). However, given that Pena's claims of deficiency involve distinct issues, we will discuss each instance of allegedly deficient performance separately, and then determine whether counsel's overall representation was ineffective.

**Failure to record voir dire**

Pena asserts that his trial counsel was deficient for failing to ensure that a complete record of voir dire was made. Prior to voir dire, the trial court informed the parties that given the acoustics in the courtroom, the prospective jurors would be required to speak into a microphone during their responses if the court reporter was to transcribe voir dire. The trial court stated that this procedure tended to slow down the voir dire process because jurors would have to pass the microphone amongst themselves. The trial court then asked the parties how they would like to proceed. The parties, including Pena's trial counsel, agreed to waive the recording of voir dire.

On appeal, Pena asserts that his trial counsel's decision to waive a recording of voir dire constituted deficient performance because there could be no sound trial strategy for failing to properly preserve the record. Pena claims that a record could have potentially demonstrated that various jurors should have been excluded, given that they may have been biased against him for

6

walking out of the courtroom.[3]  *See* Tex. Gov't Code Ann. § 62.105(4) (West 2012) (disqualifying

jurors who have bias in favor of or against party).  Furthermore, Pena states that a record could

potentially demonstrate that the Department unlawfully excluded potential jurors based on race.  *See*

*Davis v. Fisk Elec. Co.*, 268 S.W.3d 508, 510 (Tex. 2008) (citing *Batson v. Kentucky*, 476 U.S. 79

(1986)) (noting that party may not use peremptory challenges to exclude potential jurors based on race).

The failure of counsel to request the recording of voir dire is not ineffective assistance

per se.  *See Brennan v. State*, 334 S.W.3d 64, 77 (Tex. App.—Dallas 2009, no pet.); *Ybarra v. State*,

890 S.W.2d 98, 112 (Tex. App.—San Antonio 1994, pet. ref'd); *Wills v. State*, 867 S.W.2d 852, 857

(Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).  A party must show some injury resulting from

the failure to request transcription.  *Brennan*, 334 S.W.3d at 77 (citing *Lopez v. State*, 838 S.W.2d 758,

760 (Tex. App.—Corpus Christi 1992, no pet.)); *Ybarra*, 890 S.W.2d at 112 (citing *Wills*, 867 S.W.2d

at 857).  Without a showing of actual harm, "we cannot conclude that the mere failure to request a voir

dire recordation was ineffective assistance." *Brennan*, 334 S.W.3d at 77 (internal citations omitted).

In this case, Pena has failed to demonstrate in the record that he was harmed by his

counsel's failure to record voir dire.  Although Pena hypothesizes that a record of voir dire could

have demonstrated that jurors were biased against him or that the Department impermissibly

excluded jurors based on race, there is nothing in the record to support that speculation.  *See In re M.S.*,

115 S.W.3d at 545–46 (noting that parent has duty to bring forth record affirmatively demonstrating

---

[3] The parties do not dispute that Pena, in fact, left the courtroom during voir dire.  Although this exit was not recorded, the trial court did subsequently note on the record—in an exchange that occurred outside the presence of the jury—that Pena "walked off in a huff during jury selection. Jurors reported, as you know, that he was cursing under his breath."

ineffectiveness). In fact, the trial court noted that Pena's trial counsel "did an exemplary job in this case, and even on voir dire, after [Pena] stormed out, did a good job of following up with the jury to see what effects that might have on the jury." Because Pena has failed to show that he was harmed by his counsel's failure to record voir dire, we cannot conclude that counsel was ineffective. *See id.*

**Failure to request a continuance**

Pena also asserts that his trial counsel was deficient for failing to request a continuance when it became apparent that Pena would not be present during the majority of the trial. As previously discussed, Pena left the courtroom during voir dire. The following day, before the commencement of trial, Pena's counsel told the court that Pena was having "transportation issues" and "some issues with his medical—physical health," and that he would not be in court until the next day. Later that same day, Pena's counsel asked the trial court if it would "allow [her] time to see if [Pena] shows up tomorrow . . . ?" The trial court informed Pena's counsel that if the Department finished its case, Pena's counsel would have to present her case or close. The court stated that Pena's counsel could potentially reopen her case the following morning if Pena were present. Pena did not come to court the following morning, and the parties gave their closing arguments without Pena ever being present during the trial.

On appeal, Pena asserts that his trial counsel's failure to move for a continuance when it was clear that he would be absent constituted deficient performance. Pena notes that the trial court repeatedly reminded his counsel that she had not filed a sworn motion for continuance, but that counsel nonetheless declined to file such a motion. Pena asserts that he was prejudiced by this

8

deficient performance because the Department referenced Pena's absence during its closing argument, stating Pena "can't even be bothered to show up to court to fight for [A. P.]."

Generally, a party requesting a continuance must show "sufficient cause," supported by an affidavit, demonstrating why a continuance should be granted. *See* Tex. R. Civ. P. 251. The absence of a party to a proceeding, standing alone, is not sufficient cause to grant a continuance. *See Ngo v. Ngo*, 133 S.W.3d 688, 693 (Tex. App.—Corpus Christi 2003, no pet.); *In re T.M.*, No. 02-09-00145-CV, 2009 Tex. App. LEXIS 9943, at *16–17 (Tex. App.—Fort Worth Dec. 31, 2009, pet. denied) (mem. op.). The absent party must show that it had a reasonable excuse for not being present and that its absence would result in prejudice. *Ngo*, 133 S.W.3d at 693.

In this case, the record does not indicate that Pena had a reasonable excuse for being absent from the majority of the proceedings. Pena walked out of the courtroom midway through voir dire and did not return until the jury was prepared to deliver its findings. Pena's counsel stated on the record that she admonished Pena about the importance of being present at the proceedings, but that he nevertheless would not be present. Although Pena's counsel stated that Pena had some unspecified transportation and health issues, there is nothing in the record to indicate that either of these two issues constituted a reasonable excuse for his absence. *See In re Rombough*, No. 02-01-00181-CV, 2012 Tex. App. LEXIS 3716, at *8–9 (Tex. App.—Fort Worth May 10, 2012, no pet.) (mem. op.); *see also Burke v. Scott*, 410 S.W.2d 826, 828 (Tex. Civ. App.—Austin 1967, writ ref'd n.r.e.) (reciting evidence showing that appellant was so ill that he was unable to participate in defense). It appears from the record that Pena's counsel could not demonstrate sufficient cause to support a motion for continuance. Thus, we cannot conclude that Pena's counsel acted unreasonably

9

by failing to request a continuance. *See Holland v. State*, 761 S.W.2d 307, 318–19 (Tex. Crim. App. 1988) ("[T]rial counsel is under no obligation to do what would amount to a futile act.").

Therefore, Pena has failed to bring forth a record which affirmatively demonstrates that he received ineffective assistance of counsel. Pena's counsel was not afforded the opportunity to explain her conduct and, based on this record, we cannot say that his counsel's performance was deficient. *See Garcia*, 57 S.W.3d at 440. Furthermore, to the extent that counsel's performance was arguably deficient, Pena has failed to show that he was prejudiced by that performance. Thus, we cannot conclude that Pena received ineffective assistance of counsel. Pena's first point of error is overruled. Having overruled Pena's ineffective-assistance-of-counsel claim, we need not address the trial court's order appointing the Department as A. P.'s sole managing conservator. *See* Tex. R. App. P. 47.1 (requiring appellate courts to hand down opinions that are as brief as possible while addressing those issues necessary to final disposition of appeal).

## CONCLUSION

We affirm the trial court's order.

_____

Diane M. Henson, Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed: November 21, 2012