TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00231-CR






Jose Jorge Cantu, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 274THJUDICIAL DISTRICT


NO. 2000-119, HONORABLE DON B. MORGAN, JUDGE PRESIDING







 After being charged with the offense of murder, appellant was convicted by a jury of
the lesser offense of voluntary manslaughter. See Tex. Pen. Code Ann. §§ 19.02, .04 (West 1994). 
The jury assessed punishment at twenty years' confinement and a $10,000 fine. Appellant
challenges his conviction, asserting that he received ineffective assistance of counsel, that the trial
court erred by admitting expert testimony, and that the trial court erred by failing to limit the
definitions of culpable mental states in the jury charge. We affirm the trial court's judgment.


FACTUAL AND PROCEDURAL BACKGROUND (1)


 Appellant killed his roommate, Guillermo Perez, in November 1987 and fled to
Mexico where he resided until February 2000. Perez's body was located approximately two months
after his death in a barn near Edna. Despite the advanced decomposition of the body, the medical
examiner determined that death was caused by three stab wounds to the chest. At trial, appellant
testified as a witness in his own behalf and claimed that he killed Perez in self-defense.

 Appellant lived and worked with Perez in Lockhart. According to his testimony at
trial, he was planning to move out of their residence because of Perez's homosexual advances
towards him. On the evening of Perez's death, he and Perez attended a party. At the party, Perez
learned of appellant's plan to move out. When they returned home, appellant entered his bathroom
to take a shower. While he was stepping into the shower with his back turned to the door, Perez
entered the bathroom and attempted to stab him with a knife. Appellant blocked the strike, and in
doing so, received a cut on his left hand. The two then fell back into the bathtub and Perez dropped
the knife. A struggle ensued during which appellant grabbed the knife and stabbed Perez, killing
him.

 After this, appellant testified that he cleaned the bathroom, placed the victim in his
truck, and disposed of the body. Appellant then drove to the border and crossed into Mexico where
he lived and worked for the next twelve years. In February 2000, he was contacted by Ricardo
Suarez, a member of the FBI Violent Crimes Task Force, regarding the victim's death and agreed
to meet with Suarez on the Texas side of the border.

 On February 25, appellant was arrested on a murder warrant at an immigration
checkpoint while attempting to cross the Texas-Mexico border to meet with Suarez. Initially,
appellant said nothing about his self-defense claim to border law enforcement upon his arrest or
during telephone conversations with law enforcement prior to his arrest. In fact, appellant claimed
he did not kill anybody and did not know what had happened to Perez. However, while in custody
in Caldwell County, appellant gave three written statements in which he admitted killing Perez, but
claimed that he did so in self-defense.

 At trial, in response to appellant's self-defense claim, the State presented as a rebuttal
witness Commander Albert Rodriguez, the director of training for the Texas Department of Public
Safety. Testifying as an expert in self-defense, Rodriguez explained that an untrained individual,
such as the appellant, would not be able to deflect a knife attack in the manner in which he claimed.

 The jury found appellant guilty of the lesser offense of voluntary manslaughter. By
six issues, appellant challenges his conviction. In his first three issues, appellant asserts that trial
counsel rendered ineffective assistance of counsel by opening the door to appellant's impeachment
with an unadjudicated deferred adjudication for burglary of a vehicle in 1987; by failing, after
opening the door to impeachment with the deferred adjudication, to request a limiting instruction;
and by failing to object to the State's elicitation of several acts of extraneous misconduct during its
cross-examination of appellant. In his fourth and fifth points of error, appellant argues that the trial
court abused its discretion in admitting the testimony of Rodriguez, the State's expert witness. In
his final point of error, appellant asserts that the trial court erred by failing to limit the definitions
of culpable mental states in the jury charge.


DISCUSSION 


1. Ineffective Assistance of Counsel

 A defendant is constitutionally entitled to reasonably effective assistance of counsel. 
Stafford v. State, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). However, this constitutional right
does not mean that a defendant is entitled to errorless counsel or counsel whose competency is
judged by hindsight. Id. "The fact that another attorney might have pursued a different course of
action at trial will not support a finding of ineffectiveness." Banks v. State, 819 S.W.2d 676, 681
(Tex. App.--San Antonio 1991, pet. ref'd).

 In assessing the effectiveness of counsel, Texas courts adhere to the test set forth by
the Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by
Hernandez v. State, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986). Under the Strickland test, the
defendant must first show that counsel's performance was deficient, i.e., that his assistance fell
below an objective standard of reasonableness. Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999). Second, appellant must affirmatively prove prejudice by showing there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceeding would have been
different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the
outcome." Id. Failure to make both the required showing of deficient performance and sufficient
prejudice defeats the ineffectiveness claim. Strickland, 466 U.S. at 689; Thompson, 9 S.W.3d at 813. 

 The burden of proving ineffective assistance of counsel rests on the defendant by a
preponderance of the evidence. Thompson, 9 S.W.3d at 813. Generally, "an appellate court looks
to the totality of the representation and the particular circumstances of each case in evaluating the
effectiveness of counsel." Id. However, in some situations a single egregious error of omission on
counsel's part can be considered ineffective assistance. See Vasquez v. State, 830 S.W.2d 948, 951 
(Tex. Crim. App. 1992).

 When determining whether counsel was ineffective, any judicial review must be
highly deferential to trial counsel and avoid the distorting effects of hindsight. Strickland, 466 U.S.
at 689; Thompson, 9 S.W.3d at 813. In the absence of a specific record developed on counsel's
ineffectiveness, the defendant must overcome a strong presumption that counsel's performance fell
within the wide range of reasonable professional assistance. Thompson, 9 S.W.3d at 813. (2) In other
words, the defendant must overcome the presumption that the challenged conduct was the product
of sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); see also
Tong v. State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). To defeat this presumption, the trial
record must affirmatively demonstrate the alleged ineffectiveness. Thompson, 9. S.W.3d at 814.

 Because appellant's first and second issues both address whether trial counsel
rendered ineffective assistance of counsel with regard to the deferred adjudication evidence, we will
review them together.


 a. Deferred Adjudication Evidence


 Appellant complains his counsel improperly "opened the door" to impeachment
evidence concerning appellant's deferred adjudication probation for burglary when he allowed
appellant to testify to the deferred adjudication on direct examination. Such evidence, appellant
argues, is barred because it is not a conviction for a felony or a crime involving moral turpitude. See
Tex. R. Evid. 609(a). (3) Furthermore, appellant complains that counsel compounded the problem by
failing to request a limiting instruction on the deferred adjudication.

 Under Rule 609, a party may attack a witness's credibility with evidence that the
witness has been convicted of a felony or crime involving moral turpitude. Id.; see also Tex. R.
Evid. 608(b). However, while not admissible to impeach credibility, evidence of a deferred
adjudication may be admissible to show a witness's bias or interest in a particular case, including
the bias or interest of a defendant who testifies. Moreno v. State, 22 S.W.3d 482, 487 (Tex. Crim.
App. 1999); see also Maxwell v. State, 486 S.W.3d 196, 199 (Tex. Crim. App. 2001). Appellant
argues that because his deferred adjudication for burglary was not a final conviction, there was no
plausible strategy for trial counsel to introduce the deferred adjudication on direct. We disagree.

 Appellant does not present any record as to counsel's decision to question appellant
about his deferred adjudication or his failure to request a limiting instruction once the door to the
deferred adjudication evidence had been opened. In this case, counsel requested notice of the State's
intention to introduce evidence of prior convictions or extraneous offenses. In response, the State
filed notice that it would introduce the deferred adjudication evidence at trial. Trial counsel filed
two motions in limine excluding "all extraneous crime or misconduct evidence," one before the State
filed notice and one after. The record does not reflect whether the court ruled on these motions. 
Because trial counsel was on notice that the State was planning to introduce evidence of the deferred
adjudication, he may have decided to introduce the evidence on direct in an effort to blunt its effect
and to persuade the jury that appellant was a credible witness. See 1 Steven Goode et al., Texas
Practice: Texas Rules of Evidence: Civil and Criminal § 609.4 (2d ed. 1993) (discussing trial
strategy of taking "sting out" of impeachment by eliciting witness's prior conviction on direct
examination). Furthermore, counsel may have decided that requesting a limiting instruction in this
instance would have been futile, or would have drawn unnecessary attention to incriminating
evidence. See Garcia v. State, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994); Rodriguez v. State,
974 S.W.2d 364, 372 (Tex. App.--Amarillo 1998, pet ref'd). However, faced with a "cold record"
on counsel's tactical decisions, we can only speculate. As the court of criminal appeals explained
in Thompson:


Rarely will a reviewing court be provided the opportunity to make its determination
[on ineffective assistance of counsel] on direct appeal with a record capable of
providing a fair evaluation of the merits of the claim involving such a serious
allegation. In the majority of instances, the record on direct appeal is simply
undeveloped and cannot adequately reflect the failings of trial counsel.



9 S.W.3d at 813-14. Due to the lack of evidence in the record regarding trial counsel's reasons for
introducing the deferred adjudication evidence and for not requesting a limiting instruction, we
cannot conclude that counsel's performance was deficient. Id.; see also Jackson, 877 S.W.2d at 771. 
Appellant has not rebutted the presumption that counsel's decision was the product of sound trial
strategy.

 Even if counsel's performance were deficient, the record does not show that there is
a reasonable probability that but for counsel's actions, the trial outcome would have been different. 
The record shows that overwhelming evidence was presented to the jury that tended to refute
appellant's self-defense claim and impeach his credibility. Such evidence included appellant's
cleaning of the crime scene before fleeing to Mexico; hiding the victim's body in a remote location; 
making telephone calls shortly after the incident in 1987, in which he confessed to killing the victim,
and in which no mention was made of self-defense (4); fleeing to Mexico and evading prosecution for
many years until his arrest; testifying in a misleading manner that he had informed his father in 1987
about the incident; and making a sequence of incriminating oral and written statements to law
enforcement upon his arrest, in which he initially denied killing the victim, then admitted killing
him, but in self-defense.

 We overrule appellant's first two issues.

 b. Extraneous Conduct

 Appellant also complains that counsel failed to lodge sufficient objections to evidence
regarding certain extraneous conduct of appellant elicited by the State during cross-examination. 
Such evidence is ordinarily barred by rule 609(a). See Tex. R. Evid. 609(a).

 On cross-examination, the State elicited the following: that appellant lied to the
Mexican government about his prior criminal record; that although a United States citizen, appellant
paid no income taxes since 1987; that appellant at one time used a false name to obtain lawful alien
status; that appellant had been previously convicted of misdemeanor DWI offenses; that appellant
had failed to make regular child support payments; and that appellant had violated the conditions of
his deferred adjudication probation. At trial, counsel made an objection to the income tax evidence
after the State elicited a response from appellant, which the court sustained, and an objection to the
evidence regarding child support payments, which the court overruled. Trial counsel did not request
an instruction to disregard the income tax testimony. Counsel also requested and received a hearing
on the admissibility of appellant's deferred adjudication file.

 Once again, the record is silent as to why counsel failed to object more vigorously to
each item of extraneous conduct or to obtain an instruction to disregard the income tax testimony.
Counsel may have concluded as a matter of strategy that to object in this instance would have drawn
unnecessary attention to incriminating evidence or would have incurred the ill will of the jury. See
Rodriguez, 974 S.W.2d at 371 (unnecessary attention); Steven Lubet, Modern Trial Advocacy:
Analysis and Practice, 266-67, (2d ed. 1997) (ill will). Assuming that the evidence of extraneous
offenses was inadmissible under Rule 609(a), in the absence of a specific record explaining counsel's
tactical decisions appellant has failed to rebut the strong presumption that counsel's decisions were
the product of sound trial strategy. Regardless, even if trial counsel's performance were deficient,
appellant has failed to demonstrate that there is a reasonable probability that but for counsel's actions
the outcome of the trial would have been different, as there was overwhelming evidence in the record
that tended to rebut appellant's self-defense claim. Therefore, we overrule appellant's third issue.


2. Expert Testimony

 In his fourth and fifth issues, appellant argues that the trial court abused its discretion
in admitting expert testimony by the State's self-defense expert, Rodriguez, regarding (1) appellant's
ability to block the alleged knife attack by the victim and (2) the possibility that appellant's hand
wound was self-inflicted. (5) Appellant argues Rodriguez was not qualified to render an expert opinion
on these issues. Because both of these issues concern Rodriguez's qualifications and are subject to
the same requirement for the admission of expert testimony, we will address them together.

 The appellant concedes that Rodriguez was generally qualified to discuss some
aspects of the use of force, self-defense, and sharp-edged weapons. Instead, appellant argues that 
the State failed to adduce adequate facts to demonstrate by clear and convincing evidence that
Rodriguez was qualified "based upon his study and application of kinesiological and physiological
principles" to give an opinion on the abilities of an untrained individual to divert a knife attack. 
Furthermore, appellant claims the State did not establish the predicate facts that Rodriguez was an
expert with relation to the receipt of knife injuries. Therefore, the substance of appellant's claim is
that Rodriguez was not qualified and that Rodriguez's testimony amounted to an unreliable scientific
opinion. (6) For the reasons set forth below, we disagree.


Standard of Review

 Preliminary questions concerning admissibility of evidence are determined by the trial
court. See Tex. R. Evid. 104(a). Whether the trial court properly admitted Rodriguez's testimony
is subject to an abuse of discretion standard of review. See Weatherred v. State, 15 S.W.3d 540, 542
(Tex. Crim. App. 2000). The test for abuse of discretion is whether the trial court acted without
reference to any guiding rules or principles. Roise v. State, 7 S.W.3d 225, 233 (Tex. App.--Austin
1999, pet. ref'd), cert. denied, 531 U.S. 895 (2000). An appellate court must uphold the trial court's
ruling if it was within the zone of reasonable disagreement. Weatherred, 15 S.W.3d at 542.


Admissibility

 Texas Rule of Evidence 702, which governs the admissibility of expert testimony,
provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or
otherwise." Tex. R. Evid. 702. 

 Rule 702 contains two initial hurdles that must be overcome before expert testimony
will be admissible. Roise, 7 S.W.3d at 234. The proponent of the testimony must establish (1) that 
the scientific, technical, or other specialized knowledge will aid the trier of fact and (2) that the
expert witness is qualified to testify on the subject. Id. Under the first prong, an expert's opinion
should be based on a body of scientific, technical, or other specialized knowledge that is pertinent
to the facts in issue, and sufficiently reliable to assist the jury in accurately understanding other
evidence or in determining a fact in issue. Id.; see also Weatherred, 15 S.W.3d at 542; Nenno v.
State, 970 S.W.2d 549, 560-61 (Tex. Crim. App. 1998). Under the second prong, no rigid formula
exists for determining whether a particular witness is qualified to testify as an expert. Roise, 7
S.W.3d at 234. Knowledge qualifying a witness as an expert "may be gleaned entirely from studying
technical works, from obtaining a specialized education, from practical experience, or from a
combination of the three." Negrini v. State, 853 S.W.2d 128, 129 (Tex. App.--Corpus Christi 1993,
no pet.) (DWI instructor qualified to testify on blood alcohol content). Under Rule 702, the party
offering the expert's testimony bears the burden of proof to establish that the expert is qualified. See
Roise, 7 S.W.3d at 234.

 While the proponent of the testimony has the burden of establishing the expert's
qualifications, the trial court has the responsibility of ensuring that those who claim to be experts
actually have expertise concerning the subject about which they are offering an opinion." Id. "[A]
person with a college degree should not be allowed to testify that the world is flat, that the moon is
made of green cheese, or that the Earth is the center of the solar system." Id. (quoting E.I. DuPont
de Nemours & Co. v. Robinson, 923 S.W.2d 549, 558 (Tex. 1995)). Therefore, a degree alone is not
enough to qualify a purported expert to give an opinion, instead the inquiry must be into the actual
qualification. Id. There must be a "fit" between the subject matter at issue and the expert's
qualifications. Id. (quoting Broders v. Heise, 924 S.W.2d 151, 153 (Tex. 1996)).

 The judge determined that Rodriguez's testimony was admissible during a hearing
held outside the presence of the jury. (7) The record from that hearing shows that Rodriguez was a
qualified martial arts expert regarding the use of force, the use of deadly force, and self-defense. 
Rodriguez's formal education included many courses in kinesiology, which he described as the study
of the actual movement of the human body through the use of certain muscle groups, and anatomy. 
After college, he attended the regular eighteen-week training academy at the Texas Department of
Public Safety (DPS). He has been employed with DPS since 1977 and, at the time of trial, was
director of training. He testified that he has attended approximately 6,000 hours of specialized
training regarding the use of force and deadly force, including a three-month period at the FBI
National Academy. Furthermore, he teaches the use of force and deadly force at the DPS academy,
and at one time taught actual, hands-on self-defense. In addition, he currently conducts research
regarding these theories. Therefore, we conclude that the trial court did not err in concluding that
Rodriguez was qualified to give an expert opinion.

 Appellant also challenges the reliability of Rodriguez's testimony. Both parties agree
that the applicable test for assessing Rodriguez's testimony, which he testified was based primarily
on his training and experience, is set forth in Nenno. (8) 970 S.W.2d at 561; see also Olin Corp. v.
Smith, 990 S.W.2d 789, 797-98 (Tex. App.--Austin 1999, pet. denied). According to Nenno, the
appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the
subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's
testimony relies upon the principles involved in the field. Id. at 561. The Nenno inquiry has been
described as the standard for admission of expert testimony in the "soft" sciences. See Weatherred,
975 S.W.2d at 542.

 Rodriguez testified that his opinion was based on special training, education, and
experience in martial arts, the use of force, and particularly self-defense, including body movements,
muscle movements, and how they work in certain situations. He also testified that he is familiar with
the legal concepts regarding the use of self-defense and deadly force, and makes presentations on
those subjects to universities and law enforcement agencies throughout the country. He has
contributed to articles on self-defense and the use of deadly force for training purposes within the
DPS training academy. Rodriguez testified that the general topic of the use of force includes the use
of deadly force and self-defense, and involves some theories from the sciences of anatomy and
kinesiology. Because of his practice, he testified that he was also familiar with the many subtopics
that exist within the topic of use of force, including the study of body movement, gross motor skills
versus complex motor skills, the study of response times, the use of firearms, the use of deadly force
without firearms, the use of chemical weapons, and the use of impact weapons. Furthermore, he
testified that gross motor skills and complex motor skills are applications of certain scientific
theories that are widely accepted in scientific literature and are used in law enforcement to train
people to respond in a certain manner in self-defense circumstances. Rodriguez proposed to apply
these theories in his testimony at trial regarding the ability to block a knife attack in the manner
described by the appellant and the possibility of receiving a self-inflicted hand wound under those
circumstances.

 We conclude that the above testimony meets the requirements of Nenno, and 
therefore that the trial court did not abuse its discretion by admitting Rodriguez's testimony. Even
if it was an abuse of discretion to admit the testimony, we would find the error harmless pursuant
to the non-constitutional standard of review. Tex. R. App. P. 44.2(b); see also King v. State, 953
S.W.2d 266, 270-71 (Tex. Crim. App. 1997). As stated previously, there was an overwhelming
amount of persuasive evidence presented at trial, aside from Rodriguez's testimony, from which the
jury could have rejected the appellant's self-defense claim. In addition, the State did not emphasize
Rodriguez's testimony in closing argument. See King, 953 S.W.2d at 272-73. Issues four and five
are overruled.


3. Error in the Jury Charge

 In his sixth issue, appellant argues that the trial court erred by failing to limit the
culpable mental state definitions in the abstract portion of the jury charge to result-oriented conduct. 
The standard of review for jury charge error in a criminal case provides that "the judgment shall not
be reversed unless the error appearing from the record was calculated to injure the rights of
defendant, or unless it appears from the record that the defendant has not had a fair and impartial
trial." Tex. Code Crim. Proc. Ann. art 36.19 (West 1981). Acknowledging that he did not make a
proper objection at trial, appellant argues that, under Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985), the error was egregious. The State concedes that appellant has correctly assigned
error, but contends that the error was not harmful. See Cook v. State, 884 S.W.2d 485, 491 (Tex.
Crim. App. 1994).

 Intentional murder as defined by the penal code is a result of conduct offense; a jury
charge which defines "intentionally" and "knowingly" as it relates to the nature of conduct as well
as the result of conduct is, therefore, incorrect. See Tex. Pen. Code Ann. §19.02(a)(1); see also
Cook, 884 S.W.2d at 491; Ybarra v. State, 890 S.W.2d 98, 106 (Tex. App.--San Antonio 1994, pet.
ref'd). Appellant points out that the trial court defined "intentionally" and "knowingly" too broadly
by including in the definitions both the nature of conduct and the result of conduct. The abstract
portion of the jury charge defined "intentionally" and "knowingly" as follows:


 A person acts intentionally, or with intent, with respect to the nature of his
conduct or to a result of his conduct when it is his conscious objective or desire to
engage in the conduct or cause the result.


 A person acts knowingly, or with knowledge, with respect to the nature of his
conduct or to circumstances surrounding his conduct when he is aware of the nature
of his conduct or that the circumstances exist. A person acts knowingly, or with
knowledge, with respect to a result of his conduct when he is aware that his conduct
is reasonably certain to cause the result.



According to appellant, because these definitions emphasized as a result of their placement the
nature of appellant's conduct, the jury may have incorrectly convicted appellant based upon the
nature of conduct, rather than the result. Furthermore, appellant argues that the prosecutor's
explanation to the jury of the application of the law to the facts prompted the jury to convict
appellant of murder if it found he consciously engaged in the conduct which ultimately caused the
victim's death rather than if appellant intended to cause the victim's death.

 We agree that the trial judge erred by including both the result and nature of conduct
in the portion of the jury charge that defined culpable mental states. But for the following reasons,
we cannot agree the error was so egregious and created such harm that appellant did not have a fair
and impartial trial.

 As the State correctly points out, charge error merely begins rather than ends the
inquiry by the reviewing court. Cook, 884 S.W.2d at 491; Ybarra, 890 S.W.2d at 105-107. 
Therefore, we examine the error in light of (1) the entire jury charge, (2) the state of the evidence,
including contested issues and weight of probative evidence, (3) the arguments of counsel, and (4)
any other relevant information. Almanza, 686 S.W.2d at 171; Zuliani v. State, 52 S.W.3d 825, 829
(Tex. App.--Austin 2001, pet. granted). Under this standard, we find, first, that the court correctly
stated the requisite mental states in the application paragraph of the jury charge. The court informed
the jury that, if it found beyond a reasonable doubt that appellant "intentionally or knowingly cause
[sic] the death of an individual, namely Guillermo Perez, by cutting or stabbing the said Guillermo
Perez with a knife, you will find the Defendant guilty of the charged offense of Murder . . . ." When
the application paragraph correctly instructs the jury, an error in the abstract instruction is not
egregious. See Medina v. State, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999) (citing Plata v. State,
926 S.W.2d 300, 302-03 (Tex. Crim. App. 1996) (inclusion of superfluous abstraction never
produces reversible error in court's charge because it does not affect jury's ability fairly and
accurately to implement application paragraph)). In addition, the jury charge defined murder as
follows: "A person commits the offense of Murder if he intentionally or knowingly causes the death
of an individual." (Emphasis added.) This definition correctly instructed the jury to find appellant
guilty of murder if he intentionally or knowingly caused the death of an individual.

 Second, the record included substantial evidence for the jury to have concluded that
appellant intentionally or knowingly, as defined under the result-oriented concept, caused the death
of the victim. The State's witness, Jamail, testified that appellant called him shortly after the
incident and claimed to have killed Perez because Perez was a jealous person and because Perez gave 
him AIDS, not that he had acted in self-defense. Also, under cross-examination, appellant admitted
that he knew during the incident that if he stabbed a person in the chest with a knife, it could
reasonably kill that person. In addition, the medical examiner testified that appellant used sufficient
force in stabbing Perez to break Perez's ribs.

 Finally, although the prosecutor did make brief reference to the court's charge in his
closing argument, it is not error for the State to quote or paraphrase the jury charge, so long as the
prosecutor's argument as to the law is not contrary to the charge. Ybarra, 890 S.W.2d at 107 (citing
Whiting v. State, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990) and Short v. State, 511 S.W.2d 288, 291
(Tex. Crim. App. 1974)). In his closing argument, the prosecutor paraphrased the court's charge,
arguing that the evidence supported a finding of murder. (9) After viewing the argument in its entirety,
we conclude that it did not call upon the jury to convict appellant because he intended to engage in
the conduct that caused the victim's death, but rather called upon the jury to find that appellant
specifically intended the victim's death to result from his conduct.

 Because the application paragraph correctly charged the jury on the culpable mental
states, the evidence supported a finding of the applicable mental states, and the prosecutor's
argument in its entirety called upon the jury to find result-oriented conduct, we conclude that the
error in the jury charge did not result in egregious harm so as to deny appellant a fair and impartial
trial. We overrule appellant's sixth issue.

 Having overruled all of appellant's issues, the judgment is affirmed.



__________________________________________

 David Puryear, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: June 13, 2002

Do Not Publish

1. Because appellant does not challenge the factual or legal sufficiency of the evidence to
support his conviction, we will briefly state facts necessary for context and discuss other facts as
needed under specific issues.
2. Appellant's motion for new trial did not address ineffectiveness of counsel.
3. Rule 609(a) provides



 General Rule. For the purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if
elicited from the witness or established by public record but only if the
crime was a felony or involved moral turpitude, regardless of punishment,
and the court determines that the probative value of admitting this evidence
outweighs its prejudicial effect.



Rule 608(b) provides:



 Specific Instances of Conduct. Specific instances of the conduct of a
witness, for the purpose of attacking or supporting the witness' credibility,
other than conviction of crime as provided in Rule 609, may not be inquired
into on cross-examination of the witness nor proved by extrinsic evidence.
4. The calls were made to Mitya T. Jamail. Jamail testified that during these phone
conversations appellant told Jamail that he "probably stabbed [the victim] a hundred times" and that
he killed the victim because the victim gave him AIDS and because the victim was a jealous person
who "wouldn't leave him alone." Jamail characterized the statement about stabbing the victim a
hundred times as simply a figure of speech. In fact, the medical examiner testified that he was able
to confirm only three stab wounds due to the advanced decomposition of the body. However, when
asked whether it was possible that the victim was stabbed one hundred times, the medical examiner
responded, "Oh, yes, very much so. And especially when you take into consideration there are stab
wounds on the chest and there are stab wounds on the left groin. So why not something in between
or on his back?"
5. The State's theory at trial was that appellant accidently cut his left hand while stabbing the
victim. This was offered in rebuttal to appellant's claim that he was cut by the victim while
attempting to block the knife attack.
6. Appellant does not dispute the relevancy of Rodriguez's testimony, therefore we confine
our analysis to whether Rodriguez was qualified and whether his opinion was reliable. 
7. At trial, Rodriguez was limited to testifying in terms of a hypothetical question and not
whether the appellant could perform the maneuvers he claimed to have made.
8. The Nenno court determined that factors applicable to the admissibility of scientific expert
testimony are to be applied with less rigor when addressing fields of study aside from the hard
sciences, such as the social sciences or fields that are based primarily upon experience and training
as opposed to scientific method. See Nenno v. State, 970 S.W.2d 549, 560-61 (Tex. Crim. App.
1998) (stating that factors such as assessing potential rate of error or subjecting theory to peer
review, "may often be inappropriate for testing the reliability of fields of expertise outside the hard
sciences").
9. The prosecutor stated, "No dispute, the defendant killed the victim, right? No dispute. 
How? By stabbing or cutting Guillermo Perez with a knife . . . . Don't forget what the basic
elements are . . . . The defendant killed the victim by stabbing or cutting him with a knife. . . . Those
are the basic elements not in dispute. The charge tells you, you must believe beyond a reasonable
doubt that the basic elements, what I just told you, and that the defendant acted in an intentional or
knowing conduct manner, okay? An intentionally or knowing act. If you believe beyond a
reasonable doubt, he is guilty of murder unless he acted in self-defense."