

# NUMBER 13-09-00181-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**KEMUEL LINDSEY,** **Appellant,**

**v.**

**THE STATE OF TEXAS,** **Appellee.**

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Garza

A jury convicted appellant Kemuel Lindsey of retaliation, a third-degree felony. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(B) (Vernon Supp. 2009). The trial court sentenced Lindsey to twenty-five years' confinement in a state facility. *See id.* § 12.35 (Vernon Supp. 2009). Lindsey presents six issues, which we reorganize and renumber as three, asserting that: (1) the evidence was legally and factually insufficient to support the verdict; (2) the

jury charge was erroneous; and (3) his counsel rendered ineffective assistance. We affirm.

## I. BACKGROUND

Nisar Ahmed owns Coastal Mart, a convenience store and gas station located at 2214 Leopard in Corpus Christi, Texas. On August 21, 2008, Ahmed and his employee Richard Nolte were working in the cash register area when Lindsey walked into the store. Ahmed testified that Lindsey wandered around the store asking customers for money and then ran outside to panhandle money from a customer who was pumping gas. According to Ahmed, Lindsey then re-entered the store, cut in line, and purchased a bag of chips for ninety-nine cents. After making his purchase, Lindsey lingered near the cash registers as another customer attempted to make a purchase. Ahmed testified that Lindsey "was looking [at] the wallet of the customer," which concerned Ahmed. The customer then stated that he needed to return to his car to obtain more money to purchase the item and walked outside. Lindsey followed the customer.

Ahmed testified that, out of his continued concern, he followed Lindsey outside and asked him not to panhandle his customers. According to Ahmed, Lindsey then proclaimed that Ahmed was "disrespecting him." Ahmed repeated his request to Lindsey not to badger his customers and to leave the store premises when Lindsey suddenly punched Ahmed in the face. Ahmed testified that the punch knocked his glasses off and caused him to fall. He testified that the left side of his face began to bleed and swell. Ahmed got up, grabbed a nearby stick to protect himself, ran inside to ask Nolte to call the police, and then returned outside where he and Lindsey continued to argue.

Nolte testified next. He stated that Ahmed actually asked him to call the police before he went outside to follow Lindsey. He testified that he was "on the phone with the police dispatch when the defendant hit [his] boss." Nolte witnessed the entire assault and

2

also provided testimony regarding Ahmed's facial injuries.

Officer Gabriel Garcia, a four-year veteran of the Corpus Christi Police Department, testified that he saw Ahmed and Lindsey arguing when he arrived at the convenience store. Officer Garcia noted that Lindsey matched the description of the offender who had been reported to the police dispatch, so he approached Lindsey, patted him down for weapons, and then detained him in the back of his marked patrol unit. Officer Garcia then spoke to Ahmed, who told him that "Lindsey was begging for money and [Ahmed] had told him numerous times to stop begging for money" when Lindsey punched him. At that point, Officer Garcia stated that he took Lindsey into custody for assault causing bodily injury.

Officer Garcia testified that, while driving Lindsey to jail, Lindsey made several threats to "come back and hurt Mr. [Ahmed] for getting him arrested." At one point, Lindsey stated that he was going to "beat the fuck out of this clerk again." When Officer Garcia asked Lindsey to calm down and relax, Lindsey instead responded, "Fuck you. I'm coming back to fuck him up for putting me in jail."

A jury found Lindsey guilty of the crime of retaliation, and this appeal ensued.

## II. Legal and Factual Sufficiency of the Evidence

By his first issue, Lindsey asserts that there was legally and factually insufficient evidence to support his retaliation conviction.[1]

### A. Standard of Review and Applicable Law

When determining the legal and factual sufficiency of evidence, appellate courts must utilize two separate and distinct standards. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). To analyze the legal sufficiency of the evidence, the court must view all of the evidence in a light most favorable to the verdict to determine "whether 'any rational

---

[1] The State's first trial in this case resulted in a mistrial. This appeal follows the State's second trial against Lindsey. We base this opinion on the record from the second trial.

3

trier of fact could have found all of the essential elements of the crime beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard gives all deference to the trier of fact "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *In the Matter of B.P.H.*, 83 S.W.3d 400, 406 (Tex. App.–Fort Worth 2002, no pet.); *see Jackson*, 443 U.S. at 319. We do not reevaluate the weight or credibility of the evidence, nor do we substitute our own conclusions for the trier of fact. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (en banc). Instead, we resolve any inconsistencies in the evidence in favor of the final judgment and consider whether the jury reached a rational decision. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In contrast, a factual sufficiency review requires the court to view the evidence in a neutral light to determine whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Evidence can be factually insufficient if it is so weak that the verdict is clearly wrong and is manifestly unjust, or if the jury's verdict is against the great weight and preponderance of the evidence. *Id*. We defer to the fact-finder's decision regarding contradictory testimony unless the record reveals that a different result is required. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

Both legal and factual sufficiency are measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *Adi v. State*, 94 S.W.3d 124, 131 (Tex. App.–Corpus Christi 2002, pet. ref'd). Under a hypothetically correct jury charge in this case, Lindsey committed retaliation

4

if he: (1) intentionally or knowingly, (2) harmed or threatened to harm Ahmed, (3) by an unlawful act, (4) in retaliation for or on account of the service or status of Ahmed as a person who has reported the occurrence of a crime. *See* TEX. PENAL CODE ANN. § 36.06(a)(1)(B).

The public policy behind the retaliation statute is to encourage "a certain class of citizens to perform vital public duties without fear of retribution." *In the Matter of B.P.H.*, 83 S.W.3d at 407 (citing *In re B.M.*, 1 S.W.3d 204, 207 (Tex. App.–Tyler 1999, no pet.)); *Doyle v. State*, 661 S.W.2d 726, 728 (Tex. Crim. App. 1983). These public duties can include, but are not limited to, "reporting criminal activities, testifying in official proceedings, or cooperating with the government in a criminal investigation." *In the Matter of B.P.H.*, 83 S.W.3d at 407. "Retaliatory intent may be inferred from an accused's acts, words, or conduct." *Id.*; *see Dues v. State*, 634 S.W.2d 304, 305 (Tex. Crim. App. 1982).

## B.    Analysis

The evidence reveals that Lindsey continued to threaten to hurt Ahmed even after Officer Garcia repeatedly asked him to "calm down and relax." Lindsey's continued threats after, and in spite of, a police officer's warning for him to stop lend support to the notion that his statements were made intentionally or knowingly. Lindsey's statement that he was going to "beat the fuck out of [Ahmed] again" is evidence that he was threatening to harm another by an unlawful act—in this case, assault. In fact, the jury heard evidence that Lindsey had already punched Ahmed in the face, thereby demonstrating that Lindsey was capable of committing such harm. The statement that Lindsey intended to "com[e] back to fuck [Ahmed] up for putting [him] in jail" establishes that he was making the threat in retaliation for Ahmed's report to the Corpus Christi Police Department about the assault.

5

Viewing this evidence in a light most favorable to the verdict, we conclude that a reasonable jury could have determined that Lindsey committed the crime of retaliation. TEX. PENAL CODE ANN. § 36.06(a)(1)(B). Accordingly, the evidence is legally sufficient to support the conviction. Further, viewing the evidence in a neutral light, we conclude that the jury was rationally justified in finding that Lindsey committed retaliation because the evidence was not so weak such that the result was clearly wrong or manifestly unjust. *Watson,* 204 S.W.3d at 414-15. The jury's verdict is also not against the great weight and preponderance of the evidence. *Id*. Thus, Lindsey's first issue is overruled.

### III. THE JURY CHARGE

Lindsey's second issue concerns the jury charge. When confronted with a jury charge issue, we must first determine whether error exists in the charge, and if so, then we must determine if any harm extended from the error. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2006); *see Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003).

### A. Determination of Error

Lindsey asserts that retaliation is a "result oriented" rather than a "conduct oriented" crime, a distinction with which this Court and several of our sister appellate courts have agreed. "Retaliation is a result oriented offense and the focus is on whether the conduct is done with an intent to effect the result specified in the statute." *In the Matter of B.P.H.*, 83 S.W.3d at 407 (citing *Herrera v. State*, 915 S.W.2d 94, 98 (Tex. App.–San Antonio 1996, no writ)); *Wilkins v. State*, 279 S.W.3d 701, 704 (Tex. App.–Amarillo 2007, no pet.); *see also Carter v. Texas*, No. 13-07-567-CR, 2008 Tex. App. LEXIS 8967, at *10-11 (Tex. App.–Corpus Christi Nov. 20, 2008, no pet.) (mem. op., not designated for publication); *cf.*

6

*Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008) (holding that assault-by-threat under Texas Penal Code section 22.01(2) is a conduct oriented offense). Thus, Lindsey argues that the jury charge submitted in this case constituted error because it allowed a jury to find Lindsey guilty of a result oriented crime by finding that he had the culpable mental state with respect to the circumstances of his conduct or the nature of his conduct. Specifically, he complains about the following mens rea portion of the jury charge:

> A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

> A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

Section 6.03 of the Texas Penal Code sets forth three separate "conduct elements" that may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 2003); *McQueen v. State,* 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). "An offense may contain any one or more of these 'conduct elements' which alone or in combination form the overall behavior which the Legislature has intended to criminalize, and it is those essential 'conduct elements' to which a culpable mental state must apply." *McQueen*, 781 S.W.2d at 603. However, when the offense charged is a result oriented offense, it is error to define "intentionally" or "knowingly" as those terms relate to the nature of the conduct at issue. *Herrera*, 915 S.W.2d at 98; *see also Ybarra v. State*, 890 S.W.2d 98, 106 (Tex. App.–San Antonio 1994, writ ref'd). In fact, we have

7

previously held that "when an offense is only a 'result' or a 'nature of the conduct' type offense, the court should submit statutory definitions of 'intentionally' or 'knowingly' which are limited to the respective culpable mental state required." *Saldivar v. State*, 783 S.W.2d 265, 267-68 (Tex. App.–Corpus Christi 1989, no writ).

Lindsey contends that all references to the "nature of his conduct" are erroneous and should not have been submitted in the charge. We agree. The additional mens rea definitions improperly expanded the avenues by which a jury could find Lindsey guilty of the offense of retaliation. Therefore, we hold that the trial court erred when it did not limit the definitions of "intentionally" or "knowingly" to the result oriented culpable mental state required for retaliation.

## B.    Harm Analysis

Finding error in the jury charge begins, rather than ends, an appellate court's inquiry. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985). Lindsey's counsel did not object to the charge, so we must now determine whether the jury charge error resulted in egregious harm to Lindsey. *See id*. at 171 (holding that if no proper objection was made at trial, the accused must prove that the error was "fundamental" or "egregious"). To constitute egregious harm, the error must "go to the very basis of the case," "deprive the accused of a 'valuable right,'" or "vitally affect his defensive theory." *Id.*at 172.

The application paragraph of the jury charge properly directed the jury's attention to the result of Lindsey's conduct rather than the conduct itself. The paragraph read as follows:

> . . . [I]f you believe from the evidence beyond a reasonable doubt, that the
> defendant, KEMUEL LINDSEY, on or about August 21, 2008, in Nueces

County, Texas, did then and there intentionally or knowingly threaten to harm Nisar Ahmed by an unlawful act, to physically harm or to kill, in retaliation for or on account of the service of Nisar Ahmed as a witness or a prospective witness or a person who had reported the occurrence of a crime, then you will find the defendant guilty of the offense of Retaliation and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "Not Guilty."

The court of criminal appeals has held that "where the application paragraph correctly instructs the jury, an error in the abstract instruction is not egregious." *Medina v. State*, 7 S.W.3d 633, 640 (Tex. Crim. App. 1999). Here, the application paragraph properly directs the jury to look at the results of Lindsey's threat. The court of criminal appeals has also ruled that "the inclusion of a merely superfluous abstraction never produces reversible error in the court's charge because it has no effect on the jury's ability [to] fairly and accurately implement the commands of the application paragraph or paragraphs." *See Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996) (concluding that "the harmfulness of error in a jury charge should be measured against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge"). On this basis, we hold that the inclusion of the "intentionally" or "knowingly" definitions which refer to the nature of Lindsey's conduct are not egregious error. The charge error did not go to the heart of Lindsey's case, deprive him of a valuable right, or vitally affect his defense. *See Almanza*, 686 S.W.2d at 172. Lindsey's second issue is overruled.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

By his third issue, Lindsey argues that the failure of Lindsey's trial counsel to object to the jury charge constitutes ineffective assistance of counsel.

9

**A.     Standard of Review and Applicable Law**

Courts evaluate claims regarding ineffective assistance of counsel under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  The *Strickland* test requires the appellant to demonstrate that counsel's performance was so deficient that it fell below an objective standard of reasonableness.  *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *see Strickland*, 466 U.S. at 687.  Assuming the appellant has demonstrated deficient assistance, he or she must then show that there is a reasonable probability that the final result would have been different but for counsel's errors.  *Thompson*, 9 S.W.3d at 812.

The appellant must prove ineffective assistance of counsel by a preponderance of the evidence.  *Id*.  The appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that counsel's actions could be considered a sound trial strategy.  *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex. App.–Corpus Christi 2006, no pet.).  A reviewing court should not second-guess legitimate tactical decisions made by trial counsel.  *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008).  "When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight."  *Thompson*, 9 S.W.3d at 813 (citing *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984)).

**B.    Analysis**

Here, Lindsey's trial counsel did not object to the charge.   The record reflects that when the trial court asked Lindsey's counsel whether he wanted "to come and look at [the jury charge] and make sure [he did not] have an objection," that counsel responded, "I already looked at it, Judge.  That's fine.  My only objection was the last—next to the last sheet and that has been changed."   The record is not clear regarding what Lindsey's counsel's prior objection was, but it is evident that his concerns about the charge had been addressed.

Lindsey asserts that his trial counsel's failure to object to the mens rea portion of the charge resulted in prejudice.   Under *Strickland*, Lindsey has the burden to show that this failure to object constituted deficient assistance of counsel.  *Strickland*, 466 U.S. at 687 Even assuming that this was deficient, Lindsey also had to demonstrate that the overall result in his case would have been different "but for" this failure to act.  *Id*.  Given the compelling nature of the State's evidence and the fact that Lindsey did not introduce any defense witnesses or exhibits whatsoever during the trial, we cannot say that Lindsey would have been found not guilty if his counsel had objected to the charge and the trial court had sustained the objection. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."  *Thompson*, 9 S.W.3d at 813.  Because Lindsey has not shown that the verdict would have been different with an objection to the charge, we cannot conclude that Lindsey's trial counsel's failure to object to the jury charge constitutes ineffective assistance of counsel.  We overrule Lindsey's third issue.

## V. Conclusion

We affirm the judgment of the trial court.

_____

_____
DORI CONTRERAS GARZA
Justice

Do Not Publish.
Tex. R. App. P. 47.2(b)
Delivered and filed the
29th day of July, 2010.